# EXHIBIT "A"

**SUMMONS**

Attorney(s) Thomas Kenny, Spiro Harrison

Office Address 830 Morris Turnpike, Second Floor

Town, State, Zip Code Short Hills, New Jersey 07078

Telephone Number 973-232-0890

Attorney(s) for Plaintiff Suntuity Solar, LLC

Suntuity Solar, LLC

_____
         Plaintiff(s)

         vs.

Amanda Roseburg

_____
         Defendant(s)

**Superior Court of
New Jersey**

Monmouth ☒County

Law          Division

Docket No: 002989-21

**CIVIL ACTION
SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                                        /s/ Michelle M. Smith/tmk
                                        _____
                                        Clerk of the Superior Court

DATED:  08/30/2021

Name of Defendant to Be Served: Amanda Roseburg

Address of Defendant to Be Served: 375 W Paddock Lane, Kaysville, Utah 84037

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

Jason C. Spiro (018382004)
Thomas M. Kenny (012792011)
Spiro Harrison
830 Morris Turnpike
Short Hills, NJ 07078
(973) 232-0881
jspiro@spiroharrison.com
tkenny@spiroharrison.com
*Attorney for Plaintiff*
Suntuity Solar, LLC

| | |
|---|---|
| SUNTUITY SOLAR, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>AMANDA ROSEBURG,<br><br>                  Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br>DOCKET NO. MON-L-<br><br>Civil Action<br><br>**COMPLAINT** |

Plaintiff Suntuity Solar LLC ("Suntuity"), by and through its undersigned counsel, by way of Complaint against Amanda Roseburg ("Roseburg") hereby states as follows:

## **INTRODUCTION**

1.      Suntuity is one of the leading providers of renewable energy services in the United States.

2.      Roseburg, along with her sister Abby Buchmiller, own Empire Solar Group, LLC ("Empire" or the "Company"), a residential commercial solar power company that operated in 15 states in the western, midwestern and southern United States.

3.      Steve Buchmiller is Abby Buchmiller's husband and was the Chief Operating Officer of Empire.

4.      Abby Buchmiller is *currently* not a party to this action  because she filed a petition for Chapter 13 bankruptcy on July 20, 2021, and Suntuity it enjoined from suing her for claims existing or arising on or before July 20, 2021 pursuant the "automatic stay" applicable under federal bankruptcy law (11 U.S.C. § 362(a)).  Suntuity intends to add her as a party-

1

defendant (a) if/when relief from the "automatic stay" is granted in Ms. Buchmiller's bankruptcy proceeding, and/or (b) if/when the stay is terminated by dismissal of her bankruptcy case.

5.      In or about June 2021, Abby Buchmiller and Roseburg solicited Suntuity to fund Empire either through debt, asset purchase or an acquisition of an ownership interest in Empire. To induce Suntuity's agreement, Abby Buchmiller and Roseburg represented to Suntuity that Empire was a growing business, with significant revenue and profitability, but short-term liquidity needs to support its continued growth.  Abby Buchmiller and Roseburg specifically stated that Empire generated over $230 million in revenue and close to $4 million in net profits in 2020.

6.      Those representations were false.  Empire's 2020 revenue was approximately $150 million, or close to half of the stated amount, and its net profits were negative.  As of June 2020, Empire was insolvent and unable to pay its debts.  At no point did Abby Buchmiller and Roseburg disclose to Suntuity that Empire was on the brink of financial collapse.  Rather, Abby Buchmiller and Roseburg obscured Empire's actual financials by informing Suntuity that Empire had recently transitioned to a new accounting system and in that process had compromised its books. They further stated that they were about to finalize their 2020 financials and 2021 Q1 and Q2 financials within a few days through the help of an external accounting firm. Nevertheless, Abby Buchmiller and Roseburg stressed the importance of Suntuity providing immediate loans to Empire because other parties had expressed interest in providing Empire with loan advances.

7.      Based on Abby Buchmiller's and Roseburg's representations, Suntuity loaned Empire $1,500,000, on or about July 1, 2021, to keep Empire's operations running.  Abby Buchmiller and Roseburg  assured Suntuity that they would: (i) provide Suntuity with expedited

due diligence, (ii) use Suntuity's funds to support Empire's turnaround, and (iii) personally support Suntuity's efforts to help grow the Company.

8.      The following week, Abby Buchmiller and Roseburg reached out to Suntuity to seek urgent loans to Empire to make that week's payroll and avoid default on Empire's obligations to dealers, creditors and other third parties.  Although Empire still had not provided Suntuity with complete access to its financials or its requested due diligence, Abby Buchmiller and Roseburg assured Suntuity that it had access to all material information and that they had disclosed all of Empire's material liabilities.

9.      Again, those representations were false.  In addition to providing Suntuity with inaccurate and incomplete financials, Empire failed to disclose numerous critical liabilities and potential liabilities, including pending investigations by multiple State Attorneys Generals, a recently filed class action lawsuit and other civil litigation exposure, and obligations to other lenders, including a vendor who had been providing loan advances to Empire for payroll in the months leading up to Suntuity's loan advances.

10.     Based on Abby Buchmiller's and Roseburg's representations, on or about July 9, 2021, Suntuity agreed to terms for lending Empire an additional $1,800,935.99 with a path toward an acquisition of Empire.  As additional support for Empire, and at the behest of Empire's largest solar finance partner, Suntuity agreed to take over management of Empire's operations to attempt to strengthen Empire's liquidity position, while Abby Buchmiller and Roseburg remained as officers of Empire. Suntuity immediately utilized its workforce, on the ground, to oversee Empire's operations.

11.     During the weeks after taking over Empire's management, Suntuity realized that Empire would require, in addition to cost cutting and restructuring measures, weekly loan

3

advances in order to maintain its operations and meet weekly payroll. Suntuity continued to loan funds to Empire so the Company could continue operations and support its payroll, including payments toward the $1,200,000 in annual salary for Abby Buchmiller, Steve Buchmiller and Roseburg, on a weekly basis, lending over $3,000,000 to Empire beyond its initial rounds of lending on July 1, 2021. In total, in July and August 2021, Suntuity provided Empire with approximately $6,500,000 million in loans.

12.     In order to address Empire liquidity issues, on or about July 22, 2021, pursuant to its contractual rights, Suntuity appointed a restructuring specialist, Rock Creek Advisers ("Rock Creek") to manage and oversee the Company's business, financial affairs and restructuring efforts. Based on Rock Creek's analysis, Empire's liquidity crisis and Abby Buchmiller's and Roseburg's deception became apparent. As Suntuity then learned, Empire was in financial crisis as early as January 2021, and at the same time Empire was struggling to pay its employees, Abby Buchmiller, Steve Buchmiller, and Roseburg significantly increased their salaries to $400,000 each per year. By June 2021, Empire's debt was insurmountable, it was defending multiple class action lawsuits, and it was responding to investigations by the State Attorneys General of Nevada and Minnesota. In addition, several key members of Empire's leadership team had either left the Company or given notice of resignation to Empire. Abby Buchmiller and Roseburg had not disclosed these facts to Suntuity.

13.     Rock Creek immediately set out to fix Empire's liquidity issues, but it soon became clear that Abby Buchmiller, Steve Buchmiller, and Roseburg were either entirely disengaged from the business, or openly obstructing Rock Creek's efforts, despite the fact that they were still collecting salaries of $400,000 each per year, at a time when Empire could not afford to pay its employees. Rather than cooperate, Abby Buchmiller and Roseburg disparaged

4

Suntuity and interfered with Rock Creek's ability to restructure Empire, including by making statements that Suntuity was attempting to steal the Company and Rock Creek was only there to serve that purpose.  They refused to work with Rock Creek, demanded that Suntuity pay them millions of dollars personally in exchange for their cooperation, and left the Company for weeks at time, taking vacations to San Diego and Disneyland while the Company struggled on a weekly basis to make payroll and only did so through Suntuity's continuing to loan Empire operating funds.

14.    Ultimately, Rock Creek reported that Empire's liquidity position was far worse than Abby Buchmiller and Roseburg had represented to Suntuity and that Empire's funding partners, dealers, and installers would no longer do business with Empire without additional support and assurances from Suntuity.  Thus, Rock Creek proposed various business arrangements between Suntuity and Empire that would enable Empire to continue to generate revenue despite these circumstances, but Abby Buchmiller and Roseburg refused to consent to any business arrangements with Suntuity.

15.    At the same, Abby Buchmiller and Roseburg continued to withhold critical information that impacted the financial viability of the Company or any potential for further agreement with Suntuity.  Notably, on or about July 20, 2021, Abby Buchmiller filed for personal bankruptcy without disclosing it to Suntuity or Rock Creek and while continuing to seek funds from Suntuity to maintain Empire's operations.

16.    Further, Abby Buchmiller and Roseburg pursued business opportunities with other solar providers and interfered with Empire's business relationships with solar power dealers who generated customers for Empire, in direct conflict with their representations that they would use their best efforts to maintain Empire's business relationships and keep Empire in

the healthiest financial state possible to pay back the approximately $6,500,000 Suntuity had loaned to it. Specifically, Abby Buchmiller and Roseburg used confidential internal communications and forwarded or blind copied these to solar power dealers in order to disparage Suntuity by making knowingly false statements that Suntuity did not intend to make commission payments to them and that Rock Creek was withholding payments under Suntuity's direction.

17. As it became clear that Empire would require some form of an in-court restructuring, Suntuity offered numerous proposals to Abby Buchmiller and Roseburg that would have involved debtor-in-possession funding by Suntuity through a Chapter 11 restructuring, but Abby Buchmiller and Roseburg refused to consent to any deal unless Suntuity personally paid them $3 million for a portion of their ownership interests.

18. As a result of their obstruction, Empire was unable to continue meeting its financial obligations to its employees and creditors and filed for Chapter 7 bankruptcy on August 22, 2021, wherein Suntuity stands to lose all or nearly all of its loans of approximately $6,500,000.

## THE PARTIES

19. Suntuity is a New Jersey limited liability company with its main office located at 2137 NJ-35, Holmdel, NJ 07733.

20. Roseburg is a resident of the State of Utah and was the co-owner and CFO of Empire.

## JURISDICTION AND VENUE

21. Pursuant to New Jersey Court Rule 4:3-2(a), jurisdiction and venue are proper in this Court because: (1) at all times relevant, Suntuity has been and continues to be a resident of Monmouth County; (2) a substantial portion of the facts giving rise to this action transpired in Monmouth County.

6

22.      Abby Buchmiller and Roseburg reached into the State of New Jersey to do business with Suntuity, a New Jersey limited liability company, including by soliciting Suntuity to lend funds and engaging Suntuity as Empire's manager.

23.      Abby Buchmiller and Roseburg had extensive communications with Suntuity officers while those officers were located in the State of New Jersey.

24.      Abby Buchmiller and Roseburg entered into a letter of intent (the "Letter of Intent") with Suntuity, personally and on behalf of Empire, which included a clause stating:

> This LOI shall be governed by and construed in accordance with the laws of the state of New Jersey, without giving effect to any choice or conflict of law provision that would cause the application of the substantive laws of any jurisdiction other than those of the State of New Jersey. All actions arising out of or relating to this LOI shall be heard and determined exclusively by New Jersey courts.

25.      Abby Buchmiller executed on behalf of Empire a private bridge loan agreement (the "Private Bridge Loan Agreement") with Suntuity which included a clause stating:

> This Agreement shall be governed by the laws of the State of New Jersey, without giving effect to its choice-of-law principles.  Lender and Borrower hereby irrevocably consent to the jurisdiction of the courts of the State of New Jersey and of any Federal court located in such state in connection with any action, suit or proceedings arising out of or relating to this Agreement or the Noter, and waive personal service of any summons, complaint or other process and agrees that the service thereof may be made by certified or registered mail or electronic communications pursuant to the Notice provisions of this Agreement.

26.      Abby Buchmiller and Roseburg executed personally, and on behalf of Empire a letter agreement with Suntuity (the "Letter Agreement") which included a clause stating, in capital letters:

> THIS AGREEMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF. ANY ACTION OR PROCEEDING AGAINST THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT MAY BE BROUGHT AND ENFORCED EXCLUSIVELY IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, AND THE PARTIES IRREVOCABLY SUBMIT

7

TO THE JURISDICTION OF SUCH COURT IN RESPECT OF ANY SUCH ACTION OR PROCEEDING.

### **FACTUAL ALLEGATIONS**

27.     Suntuity was introduced to Empire in June 2021.

28.     Empire sold solar products to businesses and consumers in 15 states in the western, midwestern and southern United States.

29.     Suntuity also sells solar products to businesses and consumers, mainly in New Jersey, Pennsylvania, Maryland, South Carolina, and Florida.

30.     Abby Buchmiller and Roseburg solicited Suntuity to lend Empire money for the purpose of supporting the Company's short-term liquidity needs.

31.     Suntuity was interested in acquiring all or substantially all of Empire's assets or Abby Buchmiller's and Roseburg's membership interests in Empire.

### **i.      Suntuity's Lending of Nearly $7 Million to Empire**

32.     To induce Suntuity's lending, Abby Buchmiller and Roseburg represented to Suntuity that Empire was a growing business, with significant revenue and profitability, with short-term liquidity needs to support its continued growth.

33.     Abby Buchmiller and Roseburg specifically stated that Empire generated over $230 million in revenue and nearly $4 million in net profits in 2020.

34.     Based on Abby Buchmiller's and Roseburg's representations, on July 1, 2021, Suntuity and Empire executed a non-binding Letter of Intent for Suntuity to consider purchasing either the assets or equity interests of Empire.  Abby Buchmiller and Roseburg agreed to the terms of the Letter of Intent both on behalf of Empire and personally.

35.     The Letter of Intent stated Suntuity would loan to Empire $1,500,000 pursuant to the Private Bridge Loan Agreement, executed in conjunction with the Letter of Intent on July 1,

2021.  Further, if Suntuity proceeded with an acquisition of Empire, the loan amount would be treated as an advance on the purchase price in any such acquisition.

36.     Abby Buchmiller executed the Private Bridge Loan Agreement on behalf of Empire which included a security agreement and promissory note.

37.     Under the Private Bridge Loan Agreement, consistent with Abby Buchmiller's and Roseburg's representations to Suntuity, Empire represented and warranted to Suntuity, among other things:

- The loan proceeds would be used *exclusively* for the purpose of providing loan advances for Empire's ongoing business operations;

- Empire was not obligated to obtain the consent of any other party, entity, court, or tribunal prior to entering into the Private Bridge Loan Agreement or executing the promissory note evidencing the loan from Suntuity to Empire;

- Empire's execution of the Private Bridge Loan Agreement and the other agreements attached to the Private Bridge Loan Agreement would not result in a breach of any other agreement which Empire was subject to; and

- No actions, suits or proceedings were pending, or to Empire's knowledge, threatened, against or affecting Empire before any court, governmental or administrative body or agency which might result in any material adverse change in the operations, business property, assets or condition (financial or otherwise) of Empire, or which would question the validity of the Private Bridge Loan Agreement or of any action taken or to be taken by Empire pursuant to or in connection with the Private Bridge Loan Agreement;

38.     In addition to the above representations and warranties, and as further inducement to Suntuity to loan Empire the funds under the Private Bridge Loan Agreement, Empire agreed to, among other things:

- Not to make any distributions of cash or property, of any kind, to its members, employees, managers, officers, affiliates, or agents without Suntuity's prior written consent.  Distributions also included salaries, bonuses or other compensation payable to any manager or key employee of Empire in amounts in excess of those historically paid to such managers or key employees of Empire; and

- Not commence or file any case, proceeding, or other action under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization, conservatorship or relief of debtors.

39.     During Suntuity's and Empire's negotiation of the terms of the Letter of Intent and Private Bridge Loan Agreement (which included a promissory note and security agreement), Abby Buchmiller repeatedly represented that the loan proceeds would provide a cushion for Empire, and that after the loans were received, Empire would be able to continue operating its business as a going concern.

40.     At no point during the negotiations did either Abby Buchmiller or Roseburg disclose that Empire was in imminent risk of financial collapse and on the brink of filing for bankruptcy.  Nor did Abby Buchmiller or Roseburg disclose that Empire recently laid off 100 of its employees in or around May or June of 2021 because it lacked the resources to pay wages, salaries and provide benefits owed to its employees.

10

41.     In addition, neither Abby Buchmiller nor Roseburg disclosed to Suntuity that Empire had between $10 million and $50 million in liabilities, and that the revenues generated were almost half of what Buchmiller and Roseburg communicated to Suntuity

42.     Additionally, Buchmiller and/or Roseburg obfuscated Empire's financial condition by stating the Company had recently transitioned to a new accounting system and in that process had compromised its books.

43.     Prior to making the above representations and warranties to Suntuity, Abby Buchmiller and Roseburg knew that Empire's revenues were significantly lower than what was communicated to Suntuity, that it lacked the ability to even pay its employees' wages and benefits, and that Empire lacked the ability to repay Suntuity. Nonetheless, they provided, or caused to be provided, information to Suntuity that they knew was materially false or misleading.

44.     For instance, neither Abby Buchmiller or Roseburg disclosed to Suntuity that Empire received loans from Everee Inc. ("Everee"), on May 14, 2021, for $146,630.96 and, on May 21, 2021, for $160,042.79, and that loan repayments were due on June 1, 2021 and on June 16, 2021, respectively.  Abby Buchmiller and Roseburg also failed to disclose that Empire failed to repay Everee in accordance with the terms of Empire's agreement with Everee.

45.     A week after Suntuity and Empire executed the Letter of Intent and Suntuity loaned Empire $1,500,000, Abby Buchmiller and Roseburg reached out to Suntuity to seek urgent additional loans to make that week's payroll and avoid default on Empire's obligations to dealers, creditors and other third parties.

46.     Although Empire still had not provided Suntuity with complete access to its financials or its requested due diligence, Abby Buchmiller and Roseburg assured Suntuity that it

11

had access to all material information and that they had disclosed all of Empire's material liabilities.

47.     On July 9, 2021, Suntuity and Empire executed the Letter Agreement.

48.     Abby Buchmiller and Roseburg executed the Letter Agreement on behalf of Empire and personally.

49.     Pursuant to the Letter Agreement, Suntuity agreed to loan Empire an additional $549,935.99.

50.     The Letter Agreement further stated that Empire required "additional funds in the amount of $1,300,000 to continue operations."

51.     As a condition to executing the Letter Agreement, Suntuity and Empire executed a management agreement (the Management Agreement") that irrevocably appointed Suntuity as the manager of Empire under the terms of Empire's May 26, 2017, Operating Agreement.

52.     Abby Buchmiller and Roseburg executed the Management Agreement on behalf of Empire.

53.     After taking over as manager, Suntuity realized that Empire's liquidity situation would require additional weekly loan advances amounting to millions of dollars.

54.     Based on ongoing misrepresentations and misleading information from Abby Buchmiller and Roseburg, Suntuity continued to fund Empire with additional lending on weekly basis to cover payroll and operational expenses.  In total, in July and August 2021, Suntuity loaned Empire approximately $6,500,000 to Empire for operational expenses.

55.     Suntuity loaned these monies, and executed the Letter of Intent, the Private Bridge Loan Agreement, and the Letter Agreement based on what turned out to be repeated false

or otherwise misleading representations and intentional withholding of crucial information by Abby Buchmiller and Roseburg about the financial health of Empire.

       ii.     **Suntuity Discovers that Empire's Financial Circumstances were Far Worse than Abby Buchmiller and Roseburg had Represented to Suntuity to Induce its Loans**

56.     In order to address Empire's serious liquidity issues, Suntuity appointed Rock Creek Advisors ("Rock Creek") as the Chief Restructuring Officer for Empire for the purpose of keeping Empire as a going concern; however, after examining Empire's records, Rock Creek began to inform Suntuity about Empire's true financial state.

57.     Rock Creek informed Suntuity that Abby Buchmiller and Roseburg overstated and exaggerated Empire's revenues.  Abby Buchmiller and Roseburg had represented to Suntuity that Empire's revenues were nearly twice what they were.

58.     Abby Buchmiller and Roseburg represented to Suntuity that Empire was profitable when, in fact, it was losing money and struggling to pay its employees and contractors.

59.     Despite Empire's precarious financial state, in the beginning of 2021, Abby Buchmiller and Roseburg had increased their salaries and the salary of Steve Buchmiller by nearly $100,000 each, to more than $400,000 annually and were continuing to receive those salaries when Suntuity took over despite the fact that Empire could not afford to pay its employees.  Through August 2021, Abby Buchmiller, Steve Buchmiller and Roseburg were paying themselves more than $23,000 per week in salary, until Rock Creek stepped in to require a reduction in salary for the good of the Company.

60.     They were also paying $54,000 per month to their father, Ron Housekeeper, and $52.000 per month to their brother, Jake Housekeeper, pursuant to a redemption agreement in

which Empire was buying back the 24.5 percent membership interest held by Ron Housekeeper and Jake Housekeeper.

61.     Abby Buchmiller and Roseburg's two sisters were also on Empire's payroll, as was their uncle and two of Roseburg's children.

62.     Thus, even as Abby Buchmiller and Roseburg were representing to Suntuity that they needed additional loans from Suntuity just to keep the Empire operating and make payroll, they were paying themselves and their families an outsized portion of that payroll and distributions.

63.     Abby Buchmiller and Roseburg also failed to disclose significant liabilities and exposure Empire had incurred as of June 2021.

64.     Abby Buchmiller and Roseburg failed to disclose that State Attorneys General in Nevada and Minnesota were investigating Empire's sales practices.

65.     Abby Buchmiller and Roseburg also failed to disclose class action lawsuits filed by Empire's former employees, including a still pending WARN Act class action.  Roseburg also settled an undisclosed class action, after Suntuity had loaned Empire millions of dollars and while it was serving as Empire's manger, for $400,000, with first informing Suntuity of the litigation.

66.     Abby Buchmiller and Roseburg failed to disclose numerous other litigations involving Empire, including a lawsuit filed in July 2021 in the Superior Court of the State of Delaware by Sonepar Affiliates for breach of Empire's obligations under a sales and credit agreement.

67.     Abby Buchmiller and Roseburg also misrepresented to Suntuity that Empire had directors' and officers' coverage.

14

68.     Abby Buchmiller failed to disclose that she personally filed a petition for Chapter 13 bankruptcy on July 20, 2021. Upon information and belief, such filing is an event of default in many of Empire's material contracts.

69.     As a result of Abby Buchmiller's and Roseburg's mismanagement and misappropriation of monies loaned to Empire by Suntuity, Empire was unable to sustain operations or meet its payroll obligations.

70.     Empire filed for Chapter 7 bankruptcy on August 22, 2021, and, as a result, Suntuity stands to lose all or nearly all of its loan of approx. $6,500,000.

### iii.     Abby Buchmiller, Steve Buchmiller and Roseburg Disparage Suntuity and Interfere with its Business Relationships

71.     At the same that Suntuity was providing loan advances to Empire, Abby Buchmiller, Steve Buchmiller and Roseburg were pursuing business opportunities with other solar providers who compete with Empire.

72.     Abby Buchmiller, Steve Buchmiller and Roseburg also worked to undermine Suntuity's efforts and interfere with Suntuity's business relationships with critical third parties.

73.     Abby and Steve Buchmiller made false statements to Empire employees and third parties business relationships that Suntuity forced Empire into bankruptcy.

74.     In discussions with several solar power dealers, Abby Buchmiller and Roseburg accused Suntuity and Rock Creek of siphoning funds out of Empire for itself.

75.     Roseburg made statements to LGCY Power and Primitive Power that Suntuity took over control of Empire and did not intend to make commission payments to LGCY Power and Primitive Power. LGCY Power and Primitive Power are large solar power dealers with whom Suntuity had business relationships that pre-existed its lending to Empire.

15

76.     Roseburg also told third parties that Suntuity was taking money for itself instead of paying dealers.

77.     Roseburg knew at the time she made those statements that they were false and would cause damage to Suntuity. Roseburg also knew that the only way for Empire to generate revenue through its contracts was through a third party, such as Suntuity.

78.     As a result of Roseburg's false statements, solar power dealers like LGCY Power and Primitive Power have expressed concern about doing business with Suntuity.

79.     Steve Buchmiller visited Empire's premises in the State of Texas and disparaged Suntuity to Empire's employees and falsely stated that Suntuity was causing Empire to file for bankruptcy.

80.     Steve Buchmiller made these false statements with the intention that Empire's employees leave Empire and go work with him at his new company.

81.     As a result of Steve Buchmiller's false statements, solar industry professionals like Empire's employees have raised concerns about doing business with Suntuity.

82.     Abby Buchmiller has been trolling Suntuity postings on social media with comments requesting people to reach out to her so that she can provide them details about Suntuity's relationship with Empire relationship for the purpose of disparaging Suntuity.

**Count One**
**Legal and Equitable Fraud**
**(Suntuity v. Roseburg)**

83.     Suntuity repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth therein.

84.     Abby Buchmiller and Roseburg made numerous material misrepresentations of past or present fact as specified herein, both verbally and in writing, with knowledge of the falsity of those representations and the intent that Suntuity rely on those misrepresentations.

16

85.     Such material misrepresentations included but were not limited to false statements regarding the financial health of Empire, including Empire's revenues and liabilities.

86.     Suntuity reasonably relied on those misrepresentations when determining whether to execute the Letter of Intent, the Private Bridge Loan Agreement, and the Letter Agreement with Empire.

87.     Suntuity reasonably relied on those misrepresentations when determining whether to make approximately $6,500,000 of dollars of loans to Empire.

88.     Suntuity would not have executed the Letter of Intent, the Private Bridge Loan Agreement, and the Letter Agreement with Empire but for the misrepresentations made by Abby Buchmiller and Roseburg.

89.     Suntuity would not have loaned approximately $6,500,000 to Empire but for the misrepresentations made by Abby Buchmiller and Roseburg.

90.     Abby Buchmiller and Roseburg induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by false pretenses, false representation(s), and actual fraud.

91.     Abby Buchmiller and Roseburg, and each of them, induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by use of a statement in writing that was materially false respecting Empire's financial condition on which Suntuity reasonably relied and that Abby Buchmiller and Roseburg, and each of them, caused to be made or published with intent to deceive.

92.     As more particularly describe above, Abby Buchmiller and Roseburg acted willfully and maliciously and caused "willful and malicious injury" to Suntuity.

17

93.     The foregoing constitutes legal and equitable fraud on the part of Abby Buchmiller and Roseburg.  Abby Buchmiller and Roseburg made representations to Suntuity that they knew to be false.  As a direct result of Abby Buchmiller's and Roseburg's false representations, Suntuity has been damaged by its loss of an approximate $6,500,000 dollars in loans made to Empire.

## Count Two
### Violation of New Jersey Uniform Securities Act, N.J. Stat. § 49:3-71
### (Suntuity v. Roseburg)

94.     Suntuity repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth therein.

95.     The New Jersey Uniform Securities Law makes it unlawful for any person to offer or sell a security by means of any untrue statement of material fact or any omission to state a material fact.

96.     The loans which Suntuity made to Empire, and the promissory notes, instruments and other evidence of indebtedness that Empire delivered to Suntuity in connection with the loan advances described herein, constitute "securities" under the New Jersey Uniform Securities Act.

97.     The New Jersey Uniform Securities Law allows any person who purchased a security to bring an action against the person who made the untrue statement of material fact or omission to state a material fact.

98.     Roseburg (and Abby Buchmiller), directly or indirectly controlled Empire, served and acted as an officer, or director of Empire, and materially aided in Empire's loan and other transactions with Suntuity.

99.     Roseburg, Abby Buchmiller, and/or other persons acting under their direction and control made untrue statements of a material fact and omitted to state material facts necessary in

18

order to make the statements made, in the light of the circumstances under which they were made, not misleading, and they made such statements with knowledge of the falsity of those representations and statements and with the intent that Suntuity would rely on such misrepresentations of material facts.

100.    Roseburg, Abby Buchmiller, and/or other persons acting under their direction and control employed a device, scheme, or artifice to defraud Suntuity.

101.    Roseburg, Abby Buchmiller, and each of them, and/or other persons acting under their direction and control engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Suntuity.

102.    Such material misrepresentations included but were not limited to false statements regarding the financial health of Empire, including Empire's revenues and liabilities.

103.    Suntuity reasonably relied on those misrepresentations when determining whether to make loans to Empire.

104.    Suntuity would not have made loans to Empire but for the misrepresentations made by Abby Buchmiller and Roseburg.

105.    Roseburg's and Buchmiller's violations were intentional and reckless.

106.    Abby Buchmiller and Roseburg induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by false pretenses, false representation(s), and actual fraud

107.    As more particularly describe above, Abby Buchmiller and Roseburg acted willfully and maliciously and caused "willful and malicious injury" to Suntuity.

108.    Abby Buchmiller and Roseburg, and each of them, induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by use of a

19

statement in writing that was materially false respecting Empire's financial condition on which Suntuity reasonably relied and that Abby Buchmiller and Roseburg, and each of them, caused to be made or published with intent to deceive.

109.    The New Jersey Uniform Securities Law allows Suntuity to bring an action to recover the amounts loaned to Empire due to misrepresentations by Abby Buchmiller and Roseburg.

## Count Three
### Violation of Utah Uniform Securities Act, Utah Code Ann. § 61-1-1 et. seq.
### (Suntuity v. Roseburg)

110.    Suntuity repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth therein.

111.    The Utah Uniform Securities Act makes it unlawful for any person to offer or sell a security by means of any untrue statement of material fact or to omit to state any material fact.

112.    The Utah Uniform Securities Act allows any person who purchased a security to bring an action against the person who made the untrue statement of material fact or omitted to state a material fact.

113.    The loans which Suntuity made to Empire, and the promissory notes, instruments and other evidence of indebtedness that Empire delivered to Suntuity in connection with the loan advances described herein, constitute "securities" under the Utah Uniform Securities Act.

114.    Roseburg (and Abby Buchmiller), directly or indirectly controlled Empire, served and acted as an officer, or director of Empire, and materially aided in Empire's loan and other transactions with Suntuity.

115.    Roseburg, Abby Buchmiller, and/or other persons acting under their direction and control made untrue statements of a material fact and omitted to state material facts necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading, and they made such statements with knowledge of the falsity of those representations and statements and with the intent that Suntuity would rely on such misrepresentations of material facts.

116.    Roseburg, Abby Buchmiller, and/or other persons acting under their direction and control employed a device, scheme, or artifice to defraud Suntuity.

117.    Roseburg, Abby Buchmiller, and each of them, and/or other persons acting under their direction and control engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Suntuity.

118.    Such material misrepresentations included but were not limited to false statements regarding the financial health of Empire, including Empire's revenues and liabilities.

119.    Suntuity reasonably relied on those misrepresentations when determining whether to make loans to Empire.

120.    Suntuity would not have made loans to Empire but for the misrepresentations made by Abby Buchmiller and Roseburg.

121.    Abby Buchmiller and Roseburg induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by false pretenses, false representation(s), and actual fraud

122.    As more particularly describe above, Abby Buchmiller and Roseburg acted willfully and maliciously and caused "willful and malicious injury" to Suntuity.

123.    Abby Buchmiller and Roseburg, and each of them, induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by use of a statement in writing that was materially false respecting Empire's financial condition on which

21

Suntuity reasonably relied and that Abby Buchmiller and Roseburg, and each of them, caused to be made or published with intent to deceive.

124.    The Utah Uniform Securities Act allows Suntuity to bring an action to recover the amounts loaned to Empire due to misrepresentations by Abby Buchmiller and Roseburg.

**Count Four**
**Fraudulent Non-Disclosure**
**(Suntuity vs. Roseburg)**

125.    Suntuity repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth therein.

126.    Abby Buchmiller and Roseburg had a duty to disclose Empire's financial situation to Suntuity as part of the negotiations for Suntuity to make the loans to Empire.

127.    Abby Buchmiller and Roseburg knew at the time that Empire entered into the Private Bridge Loan Agreement and Letter Agreement that Empire was in the zone of insolvency, that it was unable to repay its debts, and that it laid off 100 employees because it lacked resources to pay wages, salaries, and provide benefits owed to its employees.

128.    In addition, Abby Buchmiller and Roseburg knew Empire lacked the ability to repay any amounts extended by Suntuity pursuant to the Private Bridge Loan Agreement and Letter Agreement.

129.    Rather, Abby Buchmiller and Roseburg represented that Empire would be in strong financial condition after Suntuity extended the loans under the Private Bridge Loan Agreement and Letter Agreement, and that those loans would help Empire continue its business as a going concern, causing Suntuity to rely on these representations and extend loans to Empire it would not have otherwise made if Suntuity knew the extent of Empire's financial distress and that Empire was within the zone of insolvency.

22

130.     Empire's financial position was material to Suntuity's decision to enter the Private Bridge Loan Agreement and Letter Agreement, and to agree to manage Empire under the Management Agreement.

131.     Abby Buchmiller and Roseburg withheld material information to induce Suntuity to enter into the loan and management agreements with Empire on the basis of materially false and misleading financial information.

132.     As a result of Abby Buchmiller's and Roseburg's fraudulent failure to disclose and representations as alleged herein, Suntuity has been damaged in an amount to be proven at trial.

133.     Abby Buchmiller and Roseburg induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by false pretenses, false representation(s), and actual fraud.

134.     Abby Buchmiller and Roseburg, and each of them, induced Suntuity to make loan advances to Empire in an amount to be proved at trial, but at least $6,500,000, by use of a statement in writing that was materially false respecting Empire's financial condition on which Suntuity reasonably relied and that Abby Buchmiller and Roseburg, and each of them, caused to be made or published with intent to deceive.

135.     As more particularly describe above, Abby Buchmiller and Roseburg acted willfully and maliciously and caused "willful and malicious injury" to Suntuity.

136.     Because Abby Buchmiller's and Roseburg's conduct alleged herein was wanton and malicious, recklessly indifferent to Suntuity's interests, and intentionally fraudulent, Suntuity is entitled to punitive damages in an amount to be proven at trial.

**Count Five**
**Civil Conspiracy**

23

**(Suntuity vs. Roseburg)**

137.    Suntuity repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth therein.

138.    Abby Buchmiller, Steve Buchmiller and Roseburg joined together as a combination with the object of defrauding Suntuity to loan money to Empire on false, fraudulent, and misleading representations and covenants.

139.    Abby Buchmiller, Steve Buchmiller and Roseburg had a meeting of the minds toward the goal of having Suntuity loan money to Empire without disclosing the fact that Empire lacked the financial resources and ability to repay Suntuity.

140.    Abby Buchmiller, Steve Buchmiller and Roseburg engaged in one or more unlawful, overt acts in furtherance of this scheme.

141.    Specifically, Abby Buchmiller and Roseburg misrepresented the financial condition of Empire and chose to affirmatively conceal Empire's actual financial condition.

142.    Moreover, Abby Buchmiller and Roseburg requested that Suntuity loan funds to Empire despite Roseburg and Abby Buchmiller knowing Empire lacked the ability to repay the funds.  In furtherance of this scheme, Steve Buchmiller aided Abby Buchmiller and Roseburg in accomplishing their deception and concealing information from Suntuity that was relevant to its decision to lend money to Empire.

143.    Abby Buchmiller's, Steve Buchmiller's and Roseburg's unlawful conspiracy has damaged Suntuity in an amount to be proven at trial.

144.    As more particularly describe above, Abby Buchmiller and Roseburg acted willfully and maliciously and caused "willful and malicious injury" to Suntuity.

145.     Because Abby Buchmiller's, Steve Buchmiller's and Roseburg's conduct was wanton and malicious, recklessly indifferent to Suntuity's interests, and intentionally fraudulent, Suntuity is entitled to punitive damages in an amount to be proven at trial.

<u>**Count Six**</u>
**Tortious Interference with Business Relations**
**(Suntuity vs. Roseburg)**

146.     Suntuity repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth therein.

147.     Suntuity had a protectable right and reasonable expectation of economic advantage in its relationships with solar power dealers like LGCY Power and Primitive Power.

148.     Suntuity had a protectable right and reasonable expectation of economic advantage in its relationships with solar industry professionals like Empire's employees.

149.     Suntuity was doing business with solar power dealers and intended and expected to increase the volume of business it was conducting with solar power dealers.

150.     Suntuity was doing business with solar industry professionals like Empire's employees.

151.     Roseburg sabotaged Suntuity's relationship with solar power dealers by making knowingly false statements that Suntuity was using its control over Empire to interfere with their commission payments and that Suntuity was taking money for itself instead of paying solar power dealers.

152.     Roseburg's purpose was to damage Suntuity's relationship with solar power dealers.

153.     Roseburg's interference with Suntuity's business relationships with solar power dealers was intentional and done with malice and without justification.

25

154.   Such intentional and malicious interference has severely and negatively impacted Suntuity's business and commercial reputation with solar power dealers.

155.   Solar power dealers are less likely to conduct business with Suntuity due to Roseburg's intentional interference.

156.   In coordination with and at behest of Abby Buchmiller and Roseburg, Steve Buchmiller sabotaged Suntuity's relationship with solar industry professionals by knowingly making false statements that Suntuity was causing Empire to file for bankruptcy.

157.   Steve Buchmiller's purpose was to damage Suntuity's relationship with solar industry professionals.

158.   Steve Buchmiller's interference with Suntuity's business relationships with solar industry professionals was intentional and done with malice and without justification

159.   Such intentional and malicious interference has severely and negatively impacted Suntuity's business and commercial reputation with solar industry professionals.

160.   Solar industry professionals are less likely to conduct business with Suntuity due to Steve Buchmiller's intentional interference.

161.   Roseburg's and Steve Buchmiller's intentional interference with Suntuity's business relationships has damaged Suntuity reputationally and in the form of lost revenue and lost profit, with the exact amount to be determined at trial.

162.   As more particularly describe above, Abby Buchmiller, Steve Buchmiller and Roseburg acted willfully and maliciously and caused "willful and malicious injury" to Suntuity.

163.   Because Roseburg's and Steve Buchmiller's conduct was wanton, malicious and recklessly indifferent to Suntuity's interests, Suntuity is entitled to punitive damages in an amount to be proven at trial.

**Count Seven**
**Defamation**
**(Suntuity vs. Roseburg)**

164.    Suntuity repeats and reincorporates the allegations set forth in the proceeding paragraphs as though fully set forth therein.

165.    Roseburg made knowingly false statements that Suntuity stealing Empire and causing Empire to hold back commission payments to solar power dealers that it was instead keeping for itself.

166.    As a direct result of Roseburg's false and defamatory statements to solar power dealers, Suntuity has been damaged reputationally and in the form of lost revenue and lost profit, with the exact amount to be determined at trial.

167.    In coordination with and at behest of Abby Buchmiller and Roseburg, Steve Buchmiller made knowingly false statements to Empire's employees that Suntuity was causing Empire to file for bankruptcy.

168.    As a direct result of Steve Buchmiller's false and defamatory statements to Empire's employees, Suntuity has been damaged reputationally and in the form of lost revenue and lost profit, with the exact amount to be determined at trial.

169.    As more particularly describe above, Abby Buchmiller, Steve Buchmiller and Roseburg acted willfully and maliciously and caused "willful and malicious injury" to Suntuity.

170.    Because Roseburg's and Steve Buchmiller's conduct was wanton, malicious and recklessly indifferent to Suntuity's interests, Suntuity is entitled to punitive damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Suntuity demands judgment in its favor and against Roseburg as follows:

a.     Judgment in an amount to be determined at trial;

27

b.      Additional consequential, incidental, and punitive damages;

c.      Default, pre-judgment and post-judgment interest;

d.      Reasonable attorneys' fees;

e.      Preliminary and permanent injunctive relief;

f.      For such other relief as the Court deems just and proper.

## <u>DESIGNATION OF TRIAL COUNSEL</u>

In accordance with R. 4:25-4, Jason C. Spiro is hereby designated as trial counsel for Suntuity in the above matter.

## <u>CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)</u>

Suntuity hereby certifies, pursuant to R. 4:5-1(b)(2), that the matter in controversy between the parties is not, to the best of its knowledge, the subject of any other action pending in any other Court or of a pending arbitration proceeding, and Suntuity knows of no other such action that is contemplated.

Suntuity further certifies, pursuant to R. 4:5-1(b)(2), that it does not presently know the names of any non-party, aside from Abby Buchmiller, as pled above, who should be joined in this action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts.

## <u>RULE 1:38-7(b) CERTIFICATION</u>

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

<strong>SPIRO HARRISON</strong>

August 27, 2021                                By:   <u>/s/ Thomas M. Kenny</u>
                                                    Jason C. Spiro
                                                    Thomas M. Kenny

Spiro Harrison
830 Morris Turnpike, 2nd Floor
(973) 232-0881
jspiro@spiroharrison.com
Attorneys for Plaintiff
Suntuity Solar, LLC

29

# Civil Case Information Statement

## Case Details: MONMOUTH | Civil Part Docket# L-002989-21

**Case Caption:** SUNTUITY SOLAR, LLC   VS ROSEBURG AMANDA

**Case Initiation Date:** 08/27/2021

**Attorney Name:** THOMAS MICHAEL KENNY

**Firm Name:** SPIRO HARRISON

**Address:** 830 MORRIS TPKE SECOND FL SHORT HILLS NJ 07078

**Phone:** 9732320881

**Name of Party:** PLAINTIFF : Suntuity Solar, LLC

**Name of Defendant's Primary Insurance Company** (if known): None

**Case Type:** TORT-OTHER

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Are sexual abuse claims alleged by: Suntuity Solar, LLC?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/27/2021
Dated

/s/ THOMAS MICHAEL KENNY
Signed

Jason C. Spiro (018382004)
Thomas M. Kenny (012792011)
Spiro Harrison
830 Morris Turnpike
Short Hills, NJ 07078
(973) 232-0881
jspiro@spiroharrison.com
tkenny@spiroharrison.com
Attorneys for Plaintiff Suntuity Solar, LLC

|  |  |
|---|---|
| SUNTUITY SOLAR, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>AMANDA ROSEBURG,<br><br>                              Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br>DOCKET NO. MON-L-2989-21<br><br>Civil Action<br><br>**ACKNOWLEDGMENT OF SERVICE** |

Service of the August 27, 2021 Complaint on defendant Amanda Roseburg in the above-

referenced matter is hereby acknowledged this 7th day of September 2021.

Benjamin P. Thomas, Esq.
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT  84111
Attorneys for Defendant
Amanda Roseburg

September 7, 2021