**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUNTUITY SOLAR, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 21-17801 (MAS) (TJB) |
| AMANDA ROSEBURG & ABBY BUCHMILLER, | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on separate Motions to Dismiss Plaintiff Suntuity Solar, LLC's ("Suntuity") Amended Complaint from Defendant Amanda Roseburg ("Roseburg") and Defendant Abby Buchmiller ("Buchmiller," and together with Roseburg, "Defendants"). (ECF Nos. 18, 19.) Suntuity opposed both motions (ECF Nos. 26, 27), and Defendants separately replied (ECF Nos. 30, 32). With leave of the Court, Suntuity sur-replied to Roseburg's Motion. (ECF No. 35.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part Defendants' Motions.

**I.   BACKGROUND**

In this case, a creditor-turned-manager corporation seeks recovery for several common law and statutory torts against two executives in the debtor manager-managed limited liability company (LLC). The matter spans the gambit of corporate law, comprising bad lending deals,

bankruptcies, and lost business opportunities. In chronicling the Amended Complaint's boom and bust allegations, the Court accepts all well-pleaded facts as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

### A.     Empire Solicits a Competitor for Financial Help.

The story begins with two competitors in the renewable energy market: Suntuity Solar LLC and Empire Solar Group, LLC ("Empire"). (Am. Compl. ¶¶ 1-2, ECF No. 8.) Defendants Buchmiller and Roseburg co-owned Empire as members and served as the company's CEO and CFO, respectively. (*Id.* ¶¶ 21-22.) In June 2021, Empire's cash reserves began to dry up, and the company sought money to shore up its "short-term liquidity needs." (*Id.* ¶¶ 29, 32.) Through Defendants, Empire engaged Suntuity as a potential creditor. According to the Amended Complaint, Defendants represented to Suntuity that "Empire was a growing business," that Empire had "significant revenue and profitability," and that "Empire generated over $230 million in revenue and nearly $4 million in net profits in 2020." (*Id.* ¶¶ 34-35.) Spurred on by those financial assurances, Suntuity lent Empire $1.5 million in secured notes that Suntuity could convert to membership interests in Empire if it attempted to acquire Empire. (*Id.* ¶¶ 36-37 (alleging that Suntuity executed a Private Bridge Loan Agreement (the "Loan Agreement") with Empire).)

A little over a week later, Defendants again asked for money—this time to cover employee payroll and other debt obligations. (*Id.* ¶ 47.) According to the Amended Complaint, at this time, Defendants still had not provided "complete access to [Empire's] financials" or the "requested due diligence" but had assured Suntuity that they had disclosed "all material liabilities." (*Id.* ¶ 48.) Suntuity adopted a more cautious approach this time around: agreeing to lend Empire another roughly $550,000 but only if Suntuity became a manager of Empire under Empire's Operating Agreement. (*Id.* ¶¶ 51-53.) Empire agreed and Suntuity became involved in the day-to-day

2

operations of its competitor on July 9, 2021. (*Id.* ¶ 51 (alleging that the parties executed a letter agreement (the "Letter Agreement").)

      **B.**    **Suntuity Realizes Empire Is in Dire Financial Straits.**

It was not long before Suntuity caught wind of Empire's true financial situation. "After taking over as manager, Suntuity realized that Empire's liquidity situation would require additional weekly loan advances amounting to millions of dollars." (*Id.* ¶ 55.) But that was not all. Suntuity learned that Empire's cash position was not as cheery as Defendants represented—namely, in 2020, Empire took in only $150 million in revenues and had negative net profits. (*Id.* ¶ 7; *see also id.* ¶ 60 ("Abby Buchmiller and Roseburg represented to Suntuity that Empire was profitable when, in fact, it was losing money and struggling to pay its employees and contractors.").) Even worse, Empire was insolvent and behind on its debts. (Am. Compl. ¶ 7.) The Amended Complaint alleges, for example, that in June 2021 Empire defaulted on two loans to a lender that had loaned it more than $300,000. (*Id.* ¶ 46.) The crushing debt invited crushing litigation. By June 2021, Empire had drawn the scrutiny of two state attorneys general over its sales practices and the ire of bilked employees and vendors in multiple lawsuits. (*Id.* ¶¶ 66-68; *see also id.* ¶ 43 ("[N]either Abby Buchmiller nor Roseburg disclosed to Suntuity that Empire had between $10 million and $50 million in liabilities . . . .") For good measure, Buchmiller also engaged the legal system by filing for a personal Chapter 13 bankruptcy in July 2021. (Am. Compl. ¶ 70.)

To address the insolvency issues, Suntuity brought on Rock Creek Advisors ("Rock Creek") as Empire's Chief Restructuring Officer. (*Id.* ¶ 58.) In addition to revealing the true state of Empire's finances, Rock Creek attempted to save the company by instituting salary haircuts on top executives, including Defendants. (*Id.* ¶ 61 ("Through August 2021, Abby Buchmiller, Steve Buchmiller and Roseburg were paying themselves more than $23,000 per week in salary, until Rock Creek stepped in to require a reduction in salary for the good of [Empire]."); *id.* ¶ 64 ("[E]ven

3

as Abby Buchmiller and Roseburg were representing to Suntuity that they needed additional loans from Suntuity just to keep Empire operating and make payroll, they were paying themselves and their families an outsized portion of that payroll and distributions.").) Rock Creek's austerity measures, however, were in vain as Empire declared Chapter 7 bankruptcy on August 22, 2021. (*Id.* ¶ 72.)

        **C.**     **Defendants Disparage Suntuity.**

Not only did Suntuity stand to lose millions from Empire's bankruptcy, but it also faced the loss of future business from Defendants' disparagement. Specifically, the Amended Complaint alleges that Defendants "made false statements to Empire employees and third[-]part[y] business relationships that Suntuity forced Empire into bankruptcy." (*Id.* ¶ 75; *see also id.* ¶ 76 ("Abby Buchmiller and Roseburg accused Suntuity and Rock Creek of siphoning funds out of Empire for itself.").)[1] The Amended Complaint further asserts that Roseburg told specific vendors that Suntuity "did not intend to make commission payments" to those vendors—vendors which Suntuity had pre-existing relationships with. (Am. Compl. ¶ 77; *see also id.* ¶ 78 ("Roseburg also told third parties that Suntuity was taking money for itself instead of paying dealers.").) "As a result of Roseburg's false statements, solar power dealers . . . have expressed concern about doing business with Suntuity." (*Id.* ¶ 80.)

        **D.**     **Suntuity Launches This Litigation Against Defendants.**

No doubt fed up with Defendants' conduct, Suntuity sued in state court in August 2021. (*See generally* Compl., ECF No. 1-2.) Defendants removed and Suntuity amended, asserting seven causes of action: (1) legal and equitable fraud (Count I), (2) violations under the New Jersey

---

[1] The Amended Complaint also alleges that non-party Steve Buchmiller made disparaging comments. (Am. Compl. ¶¶ 81-83.)

Uniform Securities Act ("NJUSA," Count II), (3) violations under the Utah Uniform Securities Act ("UUSA," Count III), (4) fraudulent nondisclosure (Count IV), (5) civil conspiracy (Count V), (6) tortious interference with business relations (Count VI), and (7) defamation (Count VII). (*See generally* Am. Compl.) The instant Motions followed. (ECF Nos. 18, 19.)

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

In addition to satisfying the pleading requirements of Rule 8, for those claims sounding in fraud, Rule 9(b) imposes a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The heightened standard requires specific allegations as to the circumstances surrounding the fraud: "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

### III. DISCUSSION

Defendants move to dismiss all seven of the Amended Complaint's causes of action. The Court first addresses Defendants' argument under Rule 9(b) and then considers each remaining cause of action in turn.

#### A. Rule 9(b)

Defendants urge the Court to toss the Amended Complaint's fraud-based claims as deficient under Rule 9(b). They argue, for example, that "the pleading does not identify the speaker, listener, the specifics of the statement, the timing of the statement, or the purported culpable mind-set relative to the purported fraud." (Buchmiller's Moving Br. 1, ECF No. 19-1.) The Court disagrees and concludes that the Amended Complaint satisfies Rule 9(b).

To start, Rule 9(b) applies to all of the Amended Complaint's fraud-based causes of action, which include all but the tortious interference and defamation claims.[3] Under the Rule, plaintiffs must buttress their allegations with "the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). Although Rule 9(b) calls for stringent pleading, it does not demand unrealistically precise pleading about each and every fraudulent statement. Indeed, "[d]etails about the timing, context and content of the allegedly false statements must be identified in discovery, but they are not within the ambit of Rule 9(b)." *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194, 2014 WL 1767471, at *4 n.6 (D.N.J. May 1, 2014).

The Amended Complaint meets this challenge. Start with the "who" and the "what": the Amended Complaint uniformly alleges that Buchmiller and Roseburg misrepresented Empire's finances and assured Suntuity that Empire's liquidity position was nothing to worry about. (*See* Am. Compl. ¶ 6 ("Buchmiller and Roseburg represented to Suntuity that Empire was a growing business, with significant revenue and profitability, but short-term liquidity needs to support its continued growth. Abby Buchmiller and Roseburg specifically stated that Empire generated over $230 million in revenue and close to $4 million in net profits in 2020."); *id.* ¶ 48 ("Abby Buchmiller and Roseburg assured Suntuity that it had access to all material information and that

---

[3] *E.g.*, *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06-2256, 2007 WL 2459349, at *10-11 (D.N.J. Aug. 24, 2007) (common law and equitable fraud); *Sync Labs LLC v. Fusion Mfg.*, No. 11-3671, 2013 WL 4776018, at *6 (D.N.J. Sept. 4, 2013) (New Jersey Uniform Securities Act); *Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F. Supp. 2d 1181, 1190 (D. Utah 2002) (Utah Uniform Securities Act); *Weske v. Samsung Elecs. Am., Inc.*, No. 10-4811, 2012 WL 833003, at *5 (D.N.J. Mar. 12, 2012) (fraudulent nondisclosure); *Va. Sur. Co. v. Macedo*, No. 08-5586, 2009 WL 3230909, at *11 (D.N.J. Sept. 30, 2009) (fraud-based civil conspiracy).

they had disclosed all of Empire's material liabilities.").) Adding to the "what," the Amended Complaint also alleges specific information that Defendants neglected to share with Suntuity—to the tune of $10 to $50 million dollars in legal and financial liabilities. (Am. Compl. ¶ 43 ("[N]either Abby Buchmiller nor Roseburg disclosed to Suntuity that Empire had between $10 million and $50 million in liabilities . . . ."); *id.* ¶¶ 65-70 (outlining undisclosed liabilities).)

The Amended Complaint also answers the "when" and "where," alleging that in late June 2021 and early July 2021, Defendants made these false or misleading statements during negotiations over the Loan Agreement and the Letter Agreement. (*E.g.*, Am. Compl. ¶ 42 ("At no point during the negotiations did either Abby Buchmiller or Roseburg disclose that Empire was in imminent risk of financial collapse and on the brink of filing for bankruptcy. Nor did Abby Buchmiller or Roseburg disclose that Empire recently laid off 100 of its employees in or around May or June of 2021 because it lacked the resources to pay wages, salaries and provide benefits owed to its employees.").) The "how" is even more detailed. The Amended Complaint explains that Defendants knew Empire was starved for cash and lied to get it. (Am. Compl. ¶ 45 ("Prior to making the above representations and warranties to Suntuity, Abby Buchmiller and Roseburg knew that Empire's revenues were significantly lower than what was communicated to Suntuity, that it lacked the ability to even pay its employees' wages and benefits, and that Empire lacked the ability to repay Suntuity. Nonetheless, they provided, or caused to be provided, information to Suntuity that they knew was materially false or misleading.").) The lies included telling Suntuity, for example, that "Empire had recently transitioned to a new accounting system and in that process had compromised its books." (Am. Compl. ¶ 7.)

Taken together, these allegations are enough to satisfy Rule 9(b)'s general pleading requirements.[4] The Court now turns to the specific elements of each claim, mindful that the fraud-based ones must too be pled with particularity.

### B.  Count I: Legal and Equitable Fraud

The Amended Complaint first alleges fraudulent misrepresentation under theories of legal fraud and equitable fraud. Under New Jersey law, a complaint asserting legal fraud must allege "(1) a material representation by the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5) resulting damage to the plaintiff." *Petri v. McRoberts Protective Agency, Inc.*, No. 14-7459, 2015 WL 5089570, at *5 (D.N.J. Aug. 27, 2015) (citing *Weil v. Express Container Corp.*, 824 A.2d 174, 182 (N.J. Super. Ct. App. Div. 2003)). Equitable fraud is no different except that a plaintiff need not allege scienter. *See TIG Ins. Co. v. Privilege Care Mktg., Inc.*, No. 03-3747, 2005 WL 994581, at *6-7 (D.N.J. Apr. 27, 2005) (quoting *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 660 (N.J. 1989)). For substantially the same reasons as outlined in Section III.A, *supra*, the Court finds that the Amended Complaint adequately alleges each of these elements.

---

[4] The Court also rejects Defendants' "group pleading" argument under Rule 8(a). (*See* Buchmiller's Moving Br. 4-5.) Improper group pleading occurs when the plaintiff "seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done." *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015). Plainly, Suntuity has distinguished the statements made by and the conduct of Buchmiller and Roseburg. (*E.g.*, Am. Compl. ¶¶ 21-22, 38, 50, 75, 77-78.) That some allegations implicate both Defendants (because, for example, both Defendants lied to Suntuity) does not render the Amended Complaint impermissibly vague. For example, Buchmiller asserts that "the Complaint merely alleges that one of the two defendants, without identifying which one, claimed, purportedly, that Empire had revenues of $230,000,000." (Buchmiller's Moving Br. 12.) That assertion ignores the plain meaning of the word "and." (*See* Am. Compl. ¶ 35 ("Abby Buchmiller *and* Roseburg specifically stated that Empire generated over $230 million in revenue . . . ." (emphasis added)).)

Defendants resist that conclusion and counter that the Amended Complaint fails to plead reasonable reliance and scienter. (*See, e.g.*, Buchmiller's Moving Br. 9-10.) The Court disagrees. Starting with reliance, Buchmiller contends that the Amended Complaint "makes clear that an ordinary audit of the books and records by [Suntuity] of Empire would have disclosed the purported overstatement of revenue, profits, and contingent liabilities." (*Id.* at 9.)[5] Buchmiller gets the legal standard wrong for reliance. To show reliance, Suntuity must show that it suffered harm because of accepting its counterparty's statements as true—not that it should have affirmatively inquired until it was satisfied no fraud existed. *See Tonglu Rising Sun Shoes Co. v. Nat. Nine (USA) Co.*, No. 14-1634, 2016 WL 7374543, at *5 (D.N.J. Dec. 20, 2016) ("Under New Jersey law, a party's reliance is generally reasonable even if it accepts the other party's representations as true without further inquiry." (citation omitted)). Said another way, "[o]ne who engages in fraud . . . may not urge that one's victim should have been more circumspect or astute." *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 n.1 (N.J. 1981) (citation omitted). The Amended Complaint alleges that Suntuity would not have loaned out millions in notes to Empire had it known that Defendants' representations were false. (*E.g.*, Am. Compl. ¶ 90.) At this stage, that is enough.[6]

---

[5] The Court strains to understand the substance of this argument because Defendants appear to have a timing problem. Defendants maintain that the Amended Complaint establishes that Suntuity had access to Empire's financials "at the time the loan closed." (Buchmiller's Moving Br. 9.) Even if that was true (and reasons exist to doubt that conclusion), the Loan Agreement did not close until July 1, 2021. Many of the Amended Complaint's alleged misrepresentations and omissions occurred *before* July 1, 2021. (*E.g.*, Am. Compl. ¶¶ 34-35.)

[6] Further, the Court can reasonably infer that Suntuity likely did inquire into the true state of Empire's finances during negotiations over the Letter Agreement, only to be rebuffed by swift assurances from Defendants. (*See* Am. Compl. ¶ 48 ("Although Empire still had not provided Suntuity with complete access to its financials or its requested due diligence, Abby Buchmiller and Roseburg assured Suntuity that it had access to all material information and that they had disclosed all of Empire's material liabilities.").)

Defendants' argument on scienter fares little better. Suntuity need not allege scienter with particularity. Fed. R. Civ. P. 9(b) ("[M]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To that end, several allegations support the conclusion that Defendants knew they were lying.[7] For example, on July 1, 2021, Buchmiller executed the Loan Agreement that warranted Empire had "[n]o actions, suits or proceedings" against it that "might result in any material adverse change in the operations, business property, assets or condition (financial or otherwise) of Empire." (Am. Compl. ¶¶ 36, 39.) Yet, the Amended Complaint alleges that as of June 2021, two state attorneys general were investigating Empire's sales practices and that former employees had filed a class action against Empire. (*Id.* ¶¶ 65-67.) Further, common sense dictates that C-suite executives in a manager-managed LLC likely know a thing or two about the LLC's finances, particularly finances related to the company's core business. *Compare In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) ("[K]nowledge may be imputed to individual defendants when the disclosures involve the company's core business."), *with* (Am. Compl. ¶ 6 ("Abby Buchmiller and Roseburg represented to Suntuity that Empire was a growing business, with significant revenue and profitability, but short-term liquidity needs to support its continued growth."), *and id.* ¶ 7 ("[Defendants] further stated that they were about to finalize their 2020 financials and 2021 Q1 and Q2 financials within a few days through the help of an external accounting firm.").) These allegations are enough at this stage to show scienter.

With the pleading arguments out, Defendants launch a final substantive one: the integration clause in the Loan Agreement bars reasonable reliance on any prior misrepresentations.

---

[7] Almost comically, Buchmiller posits that Suntuity "has failed to identify any direct statements made by Ms. Buchmiller specifically, so Plaintiff is consequently unable to satisfy the scienter requirement in a common law legal fraud claim." (Buchmiller's Moving Br. 9.) That argument ignores the at least half-dozen or so allegations of fraudulent statements or omissions made by Buchmiller. (*E.g.*, Am. Compl. ¶¶ 34-35, 39, 41-43, 46.)

(Buchmiller's Moving Br. 16-17.) This argument also fails. The Court notes at the onset that no party has uploaded to the docket the Loan Agreement for the Court's review nor clearly articulated how the Court can consider this extrinsic document on a motion to dismiss. *See Burlington Coat Factory*, 114 F.3d at 1426 ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." (citation omitted)). Nevertheless, the Court will consider it as it is expressly relied on in the Amended Complaint and neither party appears to dispute the reliability of the document. (*See, e.g.*, Am. Compl. ¶¶ 39-40 (detailing terms of the Loan Agreement).)

Considering the substance of the integration clause, the Court concludes that it does not unambiguously disclaim reliance on prior misrepresentations. As provided in Buchmiller's Moving Brief, the clause states (in full) that "[t]he Loan Documents and any accompanying documents the Lender requires, constitutes [sic] the full and entire understanding and agreement between the Parties hereto with regard to the Loan." (Buchmiller's Moving Br. 16.) The clause is far from a specific disclaimer of reliance. *See St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*, No. 04-4540, 2005 WL 1199045, at *4 (D.N.J. May 18, 2005) ("General merger and integration clauses and disclaimers of reliance are insufficient to prevent the introduction of parol evidence of misrepresentations in . . . New Jersey."). In addition, even if the integration clause were more specific, the Court struggles to ascertain its relevance as the extrinsic evidence "is not offered to alter or vary" the terms of the Loan Agreement but rather to "avoid the contract" and "prosecute a separate action predicated upon the fraud." *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1991). The Court accordingly concludes that the integration clause is neither dispositive nor relevant to resolving this dispute.

### C.   Count II: New Jersey Uniform Securities Act

Turning next to the Amended Complaint's cause of action under the NJUSA, Suntuity must allege "(1) an untrue material statement or omission[,] (2) scienter[,] (3) causation[,] and (4) injury to a plaintiff." *DeRobbio v. Harvest Cmtys. of Sioux City, Inc.*, No. 01-1120, 2002 WL 31947203, at *6 (D.N.J. Oct. 30, 2002). Again, for substantially the same reasons as expressed in Section III.A, the Court finds the Amended Complaint sufficiently pled.

Defendants attempt to flip the script on Suntuity's cause of action by importing elements from federal securities cases. For instance, Buchmiller argues (without citation to New Jersey authority) that Suntuity must allege reliance and loss causation. Black-letter *New Jersey* law forecloses Defendants' analogy to federal law:

> The [NJUSL]'s drafters *rejected any "requirement that the buyer prove reliance* on the untrue statement or the omission. He must show only that he did not know of it." As a result, securities-fraud plaintiffs need only prove the misrepresentations and their ignorance of them, a significantly lower burden than that imposed by a common-law fraud action.
>
> . . . .
>
> The [New Jersey] Legislature . . . has already clearly stated its choice in approaching securities-fraud complaints: it did not lessen the proof required to demonstrate reliance on a misrepresentation, but instead eliminated reliance as an element of securities fraud entirely in favor of a system in which *privity establishes causation*. The Legislature balanced the plaintiff's advantage of not having to show reliance with the defendant's advantage of being immune from liability to anyone out of privity.

*Kaufman v. I-Stat Corp.*, 754 A.2d 1188, 1197 (N.J. 2002) (citations omitted) (emphases added). No reliance or loss causation elements exist for NJUSA claims; the cause of action thus passes the pleading muster.

13

### D.     Count III: Utah Uniform Securities Act

The same cannot be said for Suntuity's UUSA claim, however. That is so because the parties expressly agreed that actions arising out of the Loan Agreement and the Letter Agreement would be governed by New Jersey law. (*See* Am. Compl. ¶¶ 26-28.)[8] "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4662223, at *2 (D.N.J. Sept. 18, 2014) (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Further, where the party against whom the clause will be enforced fails to identify any relevant public policy concerns, courts generally enforce the agreed-upon choice-of-law provision. *See, e.g., Zeckman v. Bush Indus., Inc.*, No. 08-4420, 2009 WL 10728298, at *1 (D.N.J. June 23, 2009) (applying New York choice-of-law provision where the "[p]laintiff here points to no public policy of New Jersey that . . . would be violated by application of the . . . choice-of-law clause"); *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 224 n.28 (3d Cir. 2006) (applying choice-of-law clause where "[the defendant] fails to set forth any public policy interest to invalidate the choice of law provision entered into between two parties that freely bargained for the terms of the [a]greement"). So too here: Suntuity does not proffer why applying the New Jersey choice-of-law provision would infringe this state's public policy.

The Court accordingly dismisses the UUSA cause of action. Should Suntuity amend, it should allege precisely why the New Jersey choice-of-law provision does not bar claims under

---

[8] Suntuity argues only conclusorily that its claims are not governed by the choice-of-law provisions in the Loan Agreement and the Letter Agreement. (Def.'s Opp'n Br. to Buchmiller's Mot. to Dismiss 22-25, ECF No. 26.)

Utah's blue sky laws. *Cf. Organ v. Byron*, 435 F. Supp. 2d 388, 391 (D. Del. 2006) (applying choice-of-law provision after considering the plaintiff's public policy arguments).

### E. Count IV: Fraudulent Nondisclosure

Next up is Suntuity's fraudulent nondisclosure claim. The parties hone in on one element of Suntuity's nondisclosure claim: whether Defendants owed Suntuity a duty of disclosure. *See Rosenblit v. Zimmerman*, 766 A.2d 749, 758 (N.J. 2001) (noting that nondisclosure claims require a duty of disclosure). Under New Jersey law, three scenarios give rise to a duty to disclose: (1) "fiduciary relationships such as principal and agent"; (2) "situations in which either one or each of the parties in entering the transaction, expressly reposes a trust and confidence in the other"; and (3) "contracts or transactions which . . . are intrinsically fiduciary and necessarily call for perfect good faith." *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997) (cleaned up). Suntuity argues that the relationship between it and Defendants falls somewhere in either the second or third scenario because the trio were potential business partners. (Def.'s Opp'n Br. to Buchmiller's Mot. to Dismiss 17.)

Suntuity's characterization of the parties' relationship fails to convince the Court that a duty of disclosure arose. As pled, the third scenario does not apply. Before Suntuity became a manager in Empire—the time in which the Amended Complaint alleges Defendants made material omissions—the parties were engaged in a quintessential creditor-debtor relationship. Because creditors and debtors act at arms-length, nothing "intrinsically fiduciary" characterizes their relationship. *See United Jersey Bank*, 704 A.2d at 44-45 ("As aptly noted by the Court of Appeals for the Third Circuit, it 'would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table,' because their respective positions are essentially adversarial." (quoting *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988))). So, the question becomes whether Suntuity has pled enough facts to satisfy the second

scenario, a special relationship of trust. The problem for Suntuity here is that it does not plead sufficient facts or cite any law establishing that prospective business partners share a special relationship. Indeed, in many respects, prospective business partners are no different than adversarial business partners. (*See, e.g.*, Am. Compl. ¶ 33 ("Suntuity was interested in acquiring all or substantially all of Empire's assets or Abby Buchmiller's and Roseburg's membership interests in Empire.").)

The Court will thus dismiss the fraudulent nondisclosure claim for failure to allege the requisite duty of disclosure. Should Suntuity amend this claim, it should allege specific facts showing why it expected a special relationship with Defendants, particularly in the period before July 9, 2021.

  F.  **Count V: Civil Conspiracy**

"The necessary elements of a civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved by unlawful means; and (4) special damages." *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 412 (D.N.J. 2016) (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003)). This claim must fail. On its face, the Amended Complaint does not allege a written or oral agreement or confederation. (*Compare* Am. Compl. ¶ 141 ("Abby Buchmiller and Roseburg had a meeting of the minds toward the goal of having Suntuity loan money to Empire without disclosing the fact that Empire lacked the financial resources and ability to repay Suntuity."), *with Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010) (dismissing conspiracy claim where the plaintiff "has failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy").) That is especially problematic because

16

fraud-based civil conspiracy must be pled with particularity and because the Court must assure itself that Defendants' conduct is in concert rather than in parallel. *See Twombly*, 550 U.S. at 557 ("[P]arallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Callaway v. Small*, No. 21-12058, 2021 WL 6062281, at *11 (D.N.J. Dec. 22, 2021) (granting motion to dismiss where complaint alleged conspiracy because one defendant acquiesced and failed to respond to another defendant's misconduct). Otherwise, virtually any case with multiple tortfeasors could qualify as a conspiracy. As the Amended Complaint alleges nothing more than conclusions regarding a purported agreement between Defendants, the Court dismisses the civil conspiracy count.

### G. Count VI: Tortious Interference with Business Relations

Now outside the realm of Rule 9(b), the Amended Complaint need only allege tortious interference and defamation under the more relaxed notice pleading standard. *See P&I Ins. Serv., LLC v. Risk Averse Ins., LLC*, No. 20-5910, 2022 WL 103135, at *12 (E.D. Pa. Jan. 11, 2022) (ruling that because "nothing" in tortious interference claim "sounds in fraud, Rule 9(b) does not require more particularized pleading"). Tortious interference requires that Suntuity allege "[1] that it had a reasonable expectation of economic advantage, [2] which was lost as a direct result of [Defendants'] malicious interference, and [3] that it suffered losses thereby." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (first, second, and fourth alterations in original) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 932 (N.J. Super. Ct. App. Div. 1995)).

The Amended Complaint does just that. *First*, it alleges that Suntuity had a reasonable expectation of continuing relationships with several vendors—two of which it names specifically. (*See* Am. Compl. ¶ 149 ("Suntuity had a protectable right and reasonable expectation of economic advantage in its relationships with solar power dealers like LGCY Power and Primitive Power.");

17

*Harris v. Perl*, 197 A.2d 359, 363 (N.J. 1964) ("Protection is not limited to contracts already made. The law protects also a man's interest in reasonable expectations of economic advantage." (citation omitted)). *Second*, it alleges that Defendants spread lies about Suntuity to other Empire employees and solar power dealers. (*See, e.g.*, Am. Compl. ¶ 76 ("In discussions with several solar power dealers, Abby Buchmiller and Roseburg accused Suntuity and Rock Creek of siphoning funds out of Empire for itself."); *id.* ¶ 77 (alleging that Roseburg told solar power vendors that Suntuity "did not intend to make commission payments"); *id.* ¶ 78 ("Roseburg also told third parties that Suntuity was taking money for itself instead of paying dealers.").) *Finally*, the Amended Complaint alleges a reputational injury. (Am. Compl. ¶ 157 ("Solar power dealers are less likely to conduct business with Suntuity due to Roseburg's intentional interference."); *id.* ¶ 80 ("As a result of Roseburg's false statements, solar power dealers like LGCY Power and Primitive Power have expressed concern about doing business with Suntuity.").)

Defendants agitate about how the Amended Complaint does not allege "tangible loss." (Buchmiller's Moving Br. 19.) But notably, courts analyzing tortious interference claims have given plaintiffs leeway in asserting damages at the pleading stage. *See AlphaCard Sys. LLC v. Fery LLC*, No. 19-20110, 2021 WL 2190901, at *4 (D.N.J. May 31, 2021) ("[T]he Court finds it prudent to 'await the development of [the] record' before dismissing a tortious interference claim for failing to allege damages." (second alteration in original) (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 47 (N.J. 1989))). Indeed, drawing all inferences in favor of Suntuity—as the Court must at this stage—the Court cannot say that Suntuity did not suffer harm. As stated, the Amended Complaint asserts that at least two specific solar power vendors (which pre-dated Suntuity's relationship with Empire) expressed concerns about doing business with Suntuity as a

direct result of Roseburg's disparaging statements. (Am. Compl. ¶ 80.) The Court concludes the most prudent course is to await the benefit of discovery to see if Suntuity's damages come to light.

### H.     Count VII: Defamation

Turning to the final cause of action, defamation requires six elements:

> (1) a defamatory statement, (2) concerning the plaintiff, (3) which was false, (4) that was communicated to someone other than the plaintiff, (5) with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity, and (6) which caused damage.

*Cristelli v. Filomena II, Inc.*, No. 99-2862, 1999 WL 1081290, at *2 (D.N.J. Dec. 1, 1999). For the reasons already stated above regarding Suntuity's tortious interference claim, the Court concludes that the Amended Complaint is sufficiently pled for this cause of action.

The Court is not persuaded by Defendants' argument that (again) misreads the Amended Complaint and overlooks relevant law. Buchmiller represents that the following are the "only allegations" against her for this claim:

> Abby Buchmiller has been responding to Sunuity [sic] postings on social media with comments requesting people to reach out to her so that she can provide them details about Suntuity's relationship with Empire relationship for the purpose of disparaging Suntuity.
>
> . . . .
>
> Abby Buchmiller made false statement to Empire employees and third parties business relationships that Suntuity forced Empire into bankruptcy.

(Buchmiller's Moving Br. 17 (quoting Am. Compl. ¶¶ 84, 158, 166).) They are not. (*See* Am. Compl. ¶ 75 ("Abby Buchmiller and Steve Buchmiller made false statements to Empire employees and third parties business relationships that Suntuity forced Empire into bankruptcy."); *id.* ¶ 76 ("In discussions with several solar power dealers, Abby Buchmiller and Roseburg accused Suntuity and Rock Creek of siphoning funds out of Empire for itself."); *id.* ¶ 17 ("Abby Buchmiller

and Roseburg used confidential internal communications and forwarded or blind copied these to solar power dealers in order to disparage Suntuity by making knowingly false statements that Suntuity did not intend to make commission payments to them and that Rock Creek was withholding payments under Suntuity's direction.").) What's more, Buchmiller represents that "no disparaging comments are even identified in the complaint, and no listener of such disparaging comments is identified to establish damage or harm as a result of the alleged comments." (Buchmiller's Moving Br. 18.) Buchmiller is factually and legally wrong. The Amended Complaint alleges disparaging comments, solar power dealers that were recipients of those comments, and reputational harm. Further, Buchmiller exaggerates Suntuity's pleading burden, which is not heightened pleading under Rule 9(b). *See Russelman v. ExxonMobil Corp.*, No. 12-752, 2012 WL 3038589, at *10 (D.N.J. July 25, 2012) ("According to Rule 8, a defamation pleading does not need to cite precise defamatory statements, it must only provide sufficient notice to the other party of the allegations made against him." (citing *Cristelli*, 1999 WL 1081290, at *3)). The Amended Complaint adequately pleads defamation.

## IV. <u>CONCLUSION</u>

The Court grants in-part and denies in-part Defendants' Motions. It will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE