**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUNTUITY SOLAR, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMANDA ROSEBURG and ABBY BUCHMILLER,<br><br>Defendants. | Civil Action No. 21-17801 (MAS) (TJB)<br><br>**CONSOLIDATED ACTION** |
| ABBY BUCHMILLER,<br><br>Plaintiff,<br><br>v.<br><br>SUNTUITY SOLAR, LLC,<br><br>Defendant. | Civil Action No. 21-20412 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Counter-Defendants Abby Buchmiller ("Buchmiller") and Amanda Roseburg's ("Roseburg") (together, "Counter-Defendants")[1] Motion to Dismiss Counter-Plaintiff Suntuity Solar, LLC's ("Suntuity") Counterclaim (ECF No. 60)

---

[1] Roseburg submitted a Motion for Joinder in Buchmiller's Motion to Dismiss. (ECF No. 67.) Suntuity acknowledges Roseburg's joinder, and, as such, the Court grants Roseburg's request. (*See* Suntuity's Opp'n Br. 1, ECF No. 68.)

pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 61.) Suntuity opposed (ECF No. 68), and Counter-Defendants replied (ECF No. 69).[3] The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons stated below, the Court denies Counter-Defendants' Motion.

### I. BACKGROUND[4]

Part of the complex procedural story in this case begins in August 2021 with Suntuity's suit in state court against Roseburg. (*See generally* Compl., ECF No. 1-2.) Roseburg removed the case (ECF No. 1) and then moved to dismiss Suntuity's Complaint (ECF No. 6). Suntuity then amended its Complaint (Am. Compl., ECF No. 8), adding Buchmiller as a defendant and asserting seven causes of action: (1) legal and equitable fraud (Count I), (2) violations under the New Jersey Uniform Securities Act ("NJUSA," Count II), (3) violations under the Utah Uniform Securities Act ("UUSA," Count III), (4) fraudulent non-disclosure (Count IV), (5) civil conspiracy (Count V), (6) tortious interference with business relations (Count VI), and (7) defamation (Count VII). (*See generally* Am. Compl.)

---

[2] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

[3] Roseburg also joined Buchmiller's Memorandum of Law in Further Support of Buchmiller's Motion to Dismiss. (ECF No. 70.)

[4] The Court adopts the factual background as recited in its June 30, 2022 Memorandum Opinion (the "June Opinion," ECF No. 45) and only provides additional background and procedural information where relevant for the instant Motion.

Roseburg then moved to dismiss Suntuity's fraud claims (ECF No. 18), and Buchmiller moved to dismiss Suntuity's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) (ECF No. 19).[5]

On June 30, 2022, the Court issued the June Opinion, granting in part and denying in part the Counter-Defendants' motions. (*See generally* June Op.) Specifically, the Court dismissed Count III (UUSA), Count IV (fraudulent nondisclosure), and Count V (civil conspiracy) of Suntuity's Amended Complaint. (ECF No. 46.)

In August 2022, Buchmiller then answered the Amended Complaint as it pertained to the remaining counts (ECF No. 47), and Roseburg similarly answered and submitted a counterclaim against Suntuity (ECF No. 48), which Roseburg later amended ("Roseburg's Amended Counterclaim," ECF No. 50). Roseburg's Amended Counterclaim asserts the following causes of action: (1) Breach of Contract (Count I) and (2) Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II). (*Id.* 6-9.)

After the denial in part of its Motion to Dismiss in the Buchmiller Action (*see* n.5), on September 27, 2022, Suntuity answered the Buchmiller Action Complaint and asserted a counterclaim against Counter-Defendants, alleging the following causes of action: (1) Tortious Interference with Contract (Count I) and (2) Tortious Interference with Business Relations (Count II). ("Suntuity's Counterclaim" 9-13, ECF No. 60.) Suntuity alleges that actions by Counter-

---

[5] While Buchmiller's Motion to Dismiss was pending, Buchmiller initiated a new action against Suntuity on December 8, 2021, under Docket No. 21-20412 (the "Buchmiller Action"). (*See* Buchmiller Action Compl., ECF No. 1.) Buchmiller stated that she initiated the Buchmiller Action because she sought to dismiss the Amended Complaint in this action and, as a result, could not, at that time, assert counterclaims in this action. (*Id.* ¶¶ 14-15.) Suntuity moved to dismiss the Complaint in the Buchmiller Action (Buchmiller Action Def.'s Moving Br., ECF No. 9) and on August 30, 2022, the Court granted in part and denied in part Suntuity's Motion to Dismiss. (Buchmiller Action Mem. Op., ECF No. 17.) On September 8, 2022, the Court entered a consent order consolidating the Buchmiller Action with this action. (ECF No. 56.)

Defendants after the execution of the July 9, 2021 agreement (the "Letter Agreement") between Suntuity and Counter-Defendants' wholly owned company, Empire Solar Group, LLC ("Empire"), impacted Suntuity's reasonable expectation of economic advantage in its relationship with Empire. (*Id.* ¶¶ 1-2, 21, 27.)

A day later, Counter-Defendants moved to dismiss Suntuity's Counterclaim—the subject matter of the instant motion. (ECF Nos. 61, 67.) On October 24, 2022, Suntuity opposed, withdrawing its claim for Tortious Interference with Contract (Count I) in the process; thus, as a preliminary matter, the Court denies Counter-Defendants' Motion to Dismiss as moot as to this claim. (*See* Suntuity's Opp'n Br. 6 n.1.) Counter-Defendants then replied. (ECF Nos. 69, 70.)

The Motion to Dismiss as to the remaining count, Tortious Interference with Business Relations (Count II), is now ripe for resolution.

## II.     LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). "First, the [C]ourt must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second,

4

the court must accept as true all of a plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III.   DISCUSSION

Counter-Defendants move to dismiss primarily on the basis that they themselves were parties to the Letter Agreement and that because tortious interference claims can only be waged against a third-party to the contractual or economic relationship, Suntuity fails to state a claim. (Counter-Defs.' Moving Br. 6-7, ECF No. 62.) Counter-Defendants further contend that Suntuity's Counterclaim does not plausibly plead malice and intent—elements required to state the claim at issue. (*See id.* at 2-3; Counter-Defs.' Reply Br. 1, 3, ECF No. 69.) Suntuity responds that it properly alleges all the elements for its Tortious Interference with Business Relations claim. (Suntuity's Opp'n Br. 6-9.)

As the Court stated in the June Opinion, tortious interference with business relations requires that Suntuity allege "[1] that it had a reasonable expectation of economic advantage, [2] which was lost as a direct result of [Counter-Defendants'] malicious interference, and [3] that

it suffered losses thereby." (*See* June Op. 17 (quoting *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016)) (citation omitted).)

Here, Suntuity's Counterclaim does just that. *First,* it alleges that Suntuity had a reasonable expectation of continuing its relationship with Empire. (*See* Suntuity's Countercl. ¶ 9 ("In executing the Letter Agreement, Suntuity, Buchmiller and Roseburg all contemplated that Buchmiller and Roseburg, as senior executives of Empire, would continue working with Suntuity at a critical time to ensure Empire could remain a going concern."); *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 38 (N.J. 1989) ("Tortious interference developed under common law to protect parties to an *existing* or prospective contractual relationship from outside interference." (emphasis added) (citations omitted)).) Indeed, the reason Suntuity purportedly loaned Empire millions of dollars and became Empire's manager was for the express purpose of keeping Empire as a going concern and turning it into a profitable operation. (Suntuity's Countercl. ¶¶ 9-13.) *Second,* Suntuity alleges that Counter-Defendants took specific actions to undermine Suntuity's relationship with Empire. (*See, e.g.*, Suntuity's Countercl. ¶ 14 ("Buchmiller and Roseburg would not speak to each other and were frequently on vacation or otherwise absent from work during the critical period following the execution of the Letter Agreement . . . ."); *id.* ¶ 15 ("Buchmiller and Roseburg continued to siphon funds out of [ ] Empire for their personal use."); *id.* ¶ 16 ("Buchmiller failed to disclose that she personally filed a petition for Chapter 13 bankruptcy on July 20, 2021. Such [a] filing is an event of default in many of Empire's material contracts.").) *Finally*, the Counterclaim alleges an economic injury. (*See id.* ¶ 28 ("Suntuity stands to lose all or nearly all its loan of approximately $6,500,000.").) In addition, Suntuity's Counterclaim asserts that as a result of Counter-Defendants' "intentional and malicious

6

interference with Suntuity's right and reasonable expectation of economic advantage in its relationship with Empire," Suntuity was "severely and negatively impacted." (*Id.* ¶ 27.)

As mentioned, Counter-Defendants contend that Suntuity fails to state a claim because Counter-Defendants are "parties to the contracts" and a party cannot tortiously interfere with a contract to which it is a party. (Counter-Defs.' Moving Br. 6-7.) Yet, there is a distinction between tortious interference with an existing contract—a claim that Suntuity withdrew—and tortious interference with business relations. *See Harris v. Perl*, 197 A.2d 359, 363 (N.J. 1964) ("Protection is not limited to contracts already made. The law protects also a man's interest in reasonable expectations of economic advantage."). At this time, the Court cannot say that no economic relationship exists between the parties separate from the Letter Agreement, such that Suntuity had no reasonable expectation of economic advantage.

In addition, courts analyzing tortious interference claims have recognized the distinction between employee and employer when determining potential liability. *See Printing Mart-Morristown*, 563 A.2d at 42 ("Theoretically, [company] employees can be answerable for interfering with their employer's prospective contractual relationship. A corporation is regarded in law as an entity distinct from its individual officers, directors, and agents.") (citing *Specht v. Eastwood-Nealley Corp.*, 95 A.2d 485, 487 (N.J. Super. Ct. App. Div. 1953); *id.* ("Thus, the [company]-employee defendants are not parties to any contract that [company] enters."). The court in *Printing Mart-Morristown* was reluctant to determine whether employees can be held liable for tortious interference claims as the record was devoid of discussion of the issue regarding apparently conflicting agency laws. *Id.* at 43. The *Printing Mart-Morristown* court ultimately found the complaint for tortious interference against employee-defendants survived the motion to dismiss. *Id.* While other courts in this district have noted that where co-employees act within the

scope of their employment, they cannot be held liable for tortious interference with economic advantage, without further development of the record, the Court cannot say that Counter-Defendants took such actions in the course of their employment, especially when allegations include that they took company money for their personal use. *See, e.g., Hurley v. Atl. City Police Dep't*, No. 93-260, 1995 WL 854478, at *14 (D.N.J. Aug. 4, 1995), *aff'd*, 174 F.3d 95 (3d Cir. 1999) (granting summary judgment on a claim for malicious interference with contract claim where "[o]n the current record, it appears that all actions allegedly taken by the individual defendants against plaintiff were in the course of their employment").

In sum, drawing all inferences in favor of Suntuity—as the Court must at this stage—the Court cannot say that Suntuity failed to state a claim upon which relief can be granted. The Court notes the clear signal from New Jersey's Supreme Court to "approach with great caution application for dismissal . . . for failure . . . to state a claim on which relief may be granted." *Printing Mart-Morristown*, 563 A.2d at 48. Thus, the Court concludes that the most prudent course is to deny Counter-Defendants' Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Counter-Defendants' Motion to Dismiss. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE